1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SHIRLEY TAYLOR,                         No. 2:16-cv-00102-KJM-DB

12                Plaintiff,

13        v.                                 ORDER

14   ESKATON PROPERTIES, INC.;
     ESKATON HEALTH PLAN; and
15   HEALTHCOMP ADMINISTRATORS,

16                Defendants.

17

18

19            After a car accident injured plaintiff Shirley Taylor, a helicopter ambulance

20   whisked her to a hospital for treatment. Later, she tried to recoup ambulance and medical costs

21   through her employee benefits plan, but to no avail. She now pursues these benefits under

22   the Employee Retirement Income Security Act ("ERISA"). Plaintiff names her employer,

23   Eskaton Properties, Inc., and the Plan's claims administrator, HealthComp, as defendants.

24   Compl., ECF No. 1. All three parties now move for summary judgment. ECF Nos. 23, 25, 26.

25   The court heard all three motions and then submitted the matters. Hr'g Mins., Mar. 24, 2017,

26   ECF No. 24. As explained below, the court GRANTS summary judgment for defendants and

27   against plaintiff.

28

                                          1

I.    BACKGROUND

    A.    ERISA

        ERISA is a federal law establishing national minimum standards for private employee welfare benefit plans, enacted to address undercapitalized pension plans; it also governs self-funded employer health care plans. *See generally* Employment Retirement Income Security Act ("ERISA") of 1974, Pub. L. No. 93-406, 88 Stat. 829 (codified as amended at 29 U.S.C. §§ 1001-1461) (2006). "Employee welfare benefit plan" as defined by the Act, is "any plan . . . maintained by an employer or by an employee organization . . . for the purpose of providing for its participants or their beneficiaries . . . (A) medical . . . care . . . or benefits in the event of sickness, accident, disability . . . or (B) any benefit described in [29 U.S.C. § 186(c)] . . . ." 29 U.S.C. § 3(1). ERISA and the implementing Code of Federal Regulations provide numerous employee protections. For example, they (1) require health plans to clearly and continuously inform participants about the plan's features and funding, (2) outline plan administrators' fiduciary responsibilities, (3) mandate clear review procedures and timelines after a plan administrator denies an employee's benefits claim, and (4) provide a private right of action in federal court for claimants, like plaintiff here, to recover benefits the plan owes them. *See* 29 U.S.C. §§ 1001-1461.

    B.    Record

        The parties jointly submitted the undisputed Administrative Record ("A.R."), which includes 443 pages of Plan details and all correspondence regarding plaintiff's disputed claims. *See* A.R., Exs. A & B, ECF No. 36.[1] The parties agree the record is limited to the A.R., but plaintiff disputes the inclusion of two pages, A.R. 444-45, discussed below in section II.B.2.d.[2]

---

[1] Because the A.R. is so large, the parties have uploaded it in five segments. *See* ECF No. 36-1 through ECF No. 36-5.

[2] In the initial A.R., the parties noted the potential dispute as to whether A.R. 444-45 is part of the record. ECF No. 15 at 3. In the notice accompanying the subsequent, redacted A.R., the citation of disputed pages changed to A.R. 402-03. ECF No. 36 at 3. Those pages correspond to a Plan amendment and dental provision with no apparent relevance to the instant motions.

C.      The Parties, the Plan, and the "Subrogation Rights"

Plaintiff is covered by her employer's self-funded benefits plan (the "Plan").  A.R. at 1-77, 78.  Her employer, defendant Eskaton, created, funded, and formally administers the Plan.  A.R. 70.  A separate entity, defendant HealthComp, administers the claims employees bring under the Plan.  *Id.*  Eskaton has discretion to interpret the Plan's terms and to make factual eligibility findings.  A.R. 64.  The Plan states, in relevant part:

> It is the express intent of this Plan that the Plan Administrator shall have maximum legal discretionary authority to construe and interpret the terms and provisions of the Plan, to make determinations regarding issues which relate to eligibility for benefits, to decide disputes which may arise relative to a Plan Participant's rights, and to decide questions of Plan interpretation and those of fact relating to the Plan.

*Id.*

When, as here, a third party caused the injury underlying a claimant's benefits request, there is a risk the claimant will recover twice for the same injury, i.e., once from the Plan and again from the injuring party.  A.R. 305-14 (police report indicating plaintiff here was injured in a car accident involving third-party drivers).  To protect against double recovery, the Plan contains a "third-party recovery provision," entitling the Plan to any funds the third party, or an insurer, pays to plaintiff to cover the costs of her injuries.  A.R. 55.  This provision establishes the Plan's subrogation rights.  Agreeing to and cooperating with defendant's exercise of these rights is a condition precedent to Plan coverage: Plaintiff cannot proceed on a claim until she agrees to this third-party provision and provides the necessary documents.  A.R. 56.  As Plan Administrator, Eskaton has discretion to interpret and apply the Plan's subrogation rights or to delegate that authority to the claims administrator, here HealthComp, without notice.  A.R. 55 (Plan Administrator "retains sole, full and final discretionary authority to construe, apply, and interpret the language of this provision, to determine questions of fact and law arising under this

---

Accordingly, the court treats the A.R. 402-03 reference as a typographical error and still considers A.R. 444-45 as the disputed pages.  These pages correspond to the letter evincing Eskaton's post-hoc involvement in plaintiff's benefits review discussed below.

provision, and to administer the Plan's subrogation and reimbursement rights. . . [and] retains the right to delegate this discretionary authority to the Claims Administrator without notice.").

D.    <u>Plaintiff Requests Medical Reimbursement</u>

Plaintiff's medical benefits claim stems from her June 1, 2014 car accident. *See* A.R. 307-14 (Collision Report). A helicopter ambulance took her to a hospital for immediate treatment, and she was billed $117,619.28 in ambulance and hospital costs. A.R. 78-123, 138-57, 164-69, 248-65, 269-70, 288, 295, 299, 302-03. Her brother was driving, so she initially sued him for her injuries and sought to recoup remaining costs under the Plan, ultimately settling. A.R. 205, 305, 306-14 (collision reporting showing plaintiff's brother at fault); Compl. Prayer ¶ B.

1.  <u>HealthComp Denies Coverage Based on a Missing Questionnaire</u>

Plaintiff retained counsel both for her personal injury suit and her benefits claim. *See* A.R. 126 (letter informing HealthComp of plaintiff's representation). Four months after the accident, HealthComp wrote to plaintiff's counsel detailing the Plan's subrogation rights and emphasizing that "[c]ooperation with our office, and acceptance of the repayment terms, is a condition precedent to coverage under the Plan." A.R. 134 (dated Oct. 10, 2014). HealthComp also enclosed an "accident injury questionnaire" that explains "[plaintiff's] agreement to abide by the full terms and conditions of the Plan Document, including that the Third-Party Recovery (or 'Subrogation') provision is necessary in order to continue coverage for [her] injuries related to this accident." A.R. 268. The letter then asks plaintiff's counsel to "have [plaintiff] sign the enclosed form" and emphasizes "it is important that this form be returned promptly [to] avoid delays . . . ." *Id*. The questionnaire closes with an "acknowledgement" of the Plan's subrogation right, which requires a signature to affirm the claimant "read and understood the Plan's right to be reimbursed for all benefits paid for the treatment of injuries related to this accident." *Id*.

Three weeks later, plaintiff's counsel requested a copy of the Plan, which HealthComp promptly sent with a Summary Plan Description, a copy of the Plan's subrogation rights and a reminder that plaintiff's "acknowledgment and agreement to all terms and conditions

4

is a condition precedent to coverage under the Plan." A.R. 158-59 (letter from plaintiff's counsel dated Oct. 30, 2014); A.R. 171 (HealthComp documents, sent on Nov. 26, 2014).

While awaiting plaintiff's accident questionnaire, HealthComp denied plaintiff's request to cover her hospital treatment bills, A.R. 146-47 (denial dated Oct. 22, 2014), and her helicopter ambulance transport bills, A.R. 264-65 (denial dated Dec. 3, 2014). The Explanations of Benefits Forms ("denial letters") stated the reason for denial as "requested information not received." A.R. 146-47, 264-65. Both denial letters told plaintiff she had 180 days to appeal "by request[ing] in writing from the Plan Administrator or Claims Administrator a review of the claim." A.R. 147, 265.

## 2. Plaintiff Alters Her Accident Questionnaire

On December 22, 2014, plaintiff's counsel faxed plaintiff's completed accident questionnaire to HealthComp. On the form, plaintiff had crossed out the subrogation rights section and instead, handwrote, "Employee will follow the law." A.R. 266-68. Two days later, on December 24, 2014, HealthComp wrote back. A.R. 271. HealthComp verified it received plaintiff's questionnaire, but advised that her handwritten alteration to the subrogation agreement was unacceptable; this iteration of the form did not satisfy the Plan's "condition precedent to coverage," which in turn meant plaintiff's claim was not yet deemed "filed." *Id.* HealthComp explained if plaintiff "executes an unaltered accident questionnaire and agrees to abide by the reimbursement terms" within a year of the service date, as the Plan requires, HealthComp would reconsider her claim. *Id.* Within a "year of the service date" is defined as 365 days from the date doctors treated plaintiff and ambulances rescued her. A.R. 48.

Approximately two months later, on February 15, 2015, plaintiff's counsel wrote to HealthComp again, stating plaintiff would not submit an unaltered questionnaire because the questionnaire upon completion would create new contractual rights and responsibilities. A.R. 279. The letter also threatened a lawsuit. *Id.* HealthComp wrote back, "disagree[ing] with [the] accusation" and explaining "[t]he accident questionnaire does not attempt to create any additional rights"; the questionnaire "specifically states that the member understands and agrees to abide by the terms of the Plan Documents." A.R. 290-91 (dated Mar. 23, 2015). HealthComp concluded

by denying plaintiff's benefits claim for not satisfying a condition precedent and reminding plaintiff she could appeal within 180 days. *Id.*

### 3. Plaintiff Appeals Her Benefits Denial

Within a month, plaintiff appealed HealthComp's decision. A.R. 293-94 (appeal dated April 21, 2015). She raised three arguments: (1) Her handwritten questionnaire alteration violates no condition precedent to Plan coverage; (2) the Plan's subrogation rights violate state laws, citing no specific law; and (3) HealthComp withheld the "Master Plan Document" and instead sent her only a "Summary Plan Description." *Id.*

Three weeks later, on April 24, 2015, HealthComp's in-house counsel Rob Weeks reviewed and denied plaintiff's appeal. Weeks explained HealthComp's position that (1) the questionnaire protects the Plan's subrogation rights, so by crossing out the subrogation acknowledgement plaintiff violated a condition precedent; (2) California law does not govern the Plan, but, even if it did, the Plan does not violate it; and (3) there is no "Master Plan Document." A.R. 297-98.

### 4. Plaintiff Dismisses Her Personal Injury Suit

Four months after the appeal denial, and more than one year after the accident, plaintiff told HealthComp she would dismiss her personal injury lawsuit against the party that caused her accident, eliminating any third-party liability issue. *See* A.R. 304 (dated Sept. 29, 2015). Thinking this dismissal would moot any prior dispute about her alteration of the subrogation agreement, because third-party indemnification was now irrelevant, plaintiff demanded HealthComp "pay [her] outstanding medical bills." A.R. 304. Within days HealthComp replied, explaining that because plaintiff refused to acknowledge the Plan's subrogation rights within one year of her accident, the Plan would not cover her requested benefits, despite her personal injury lawsuit dismissal. A.R. 316-17 (dated Oct. 2, 2015). Plaintiff's counsel immediately wrote back confirming plaintiff had officially dismissed her personal injury suit, requesting a payout from the Plan, and explaining plaintiff was again appealing HealthComp's benefits denial. A.R. 318-20 (plaintiff's Oct. 6, 2015 letter to

HealthComp); A.R. 321-23 (plaintiff's Oct. 8, 2016 "Second Appeal").  Two months later, HealthComp denied this second appeal as untimely.  A.R. 442-43 (dated Dec. 8, 2015).

E.    Plaintiff Files Instant Complaint

Plaintiff filed this suit on January 18, 2016, seeking plan benefits under 29 U.S.C. § 1132(a)(1)(B) and attorneys' fees and costs under 29 U.S.C. § 1132(g)(1).  *See generally* Compl.  Plaintiff originally included a third claim for failure to produce a "Master Plan Document"; at hearing, she agreed to drop this claim.

Plaintiff now moves for summary judgment.  Plaintiff Mot., ECF No. 23; Pl.'s Mem., ECF No. 24.  HealthComp and Eskaton Separately opposed.  HealthComp Opp'n, ECF No. 31; Eskaton Opp'n, ECF No. 32.  HealthComp and Eskaton also filed cross motions for summary judgment.  HealthComp Mot. & Mem., ECF No. 25; Eskaton Mot., ECF No. 26; Eskaton Mem., ECF No. 26-1.  Plaintiff has opposed both defense motions.  Opp'n to Eskaton, ECF No. 29; Opp'n to HealthComp, ECF No. 30.

II.    STANDARD OF REVIEW

ERISA gives plan participants a private right of action to recover benefits under 29 U.S.C. § 1132(a)(1)(B).  Because the statute does not specify the appropriate standard of review, federal common law supplies the governing authority.  *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 962 (9th Cir. 2006).  The Supreme Court has only once directly clarified the review standards in ERISA benefit denial cases.  *Id.* at 962 (citing *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S.101, 114-15 (1989)).  *De novo* is the default review standard.  *Firestone*, 489 U.S. at 115.  But if the plan's language unambiguously gives the administrator or fiduciary discretion to determine benefit eligibility or to construe the plan's terms, the review standard is abuse of discretion.  *Abatie*, 458 F.3d at 963.

There is a clear grant of discretionary authority here: As noted above, the Plan expressly provides that "[t]he Plan Administrator retains sole, full and final discretionary authority to construe, apply, and interpret the language of this provision, to determine all questions of fact and law arising under this provision, and to administer the Plan's subrogation and reimbursement rights."  A.R. 55.  Plaintiff concedes as much, but argues (1) only Eskaton,

not HealthComp, has this discretionary authority, and (2) even if HealthComp has discretionary authority, the abuse of discretion standard should not apply because HealthComp committed procedural errors throughout her claim denial process.[3]

A.    HealthComp's Discretionary Authority

Plaintiff contends Eskaton neither delegated its discretionary power to HealthComp nor appointed HealthComp as the Plan's fiduciary. Pl.'s Mem. at 22.[4] But the Plan and the administrative record show HealthComp had discretionary and fiduciary authority to deny plaintiff's claim. The Plan expressly states the Plan Administrator may "delegate [its] discretionary authority to the Claims Administrator without notice." A.R. 55. HealthComp is the Claims Administrator. A.R. 70. Eskaton could delegate HealthComp discretionary authority without notifying plaintiff.

Even so, plaintiff had notice. Eskaton's Plan expressly tells participants to file claims with HealthComp who "will determine if enough information has been submitted to enable proper consideration of the claim." A.R. 48. This language signals HealthComp's discretionary authority; it has discretion, as here, to determine the paper work necessary for a successful claim. Also, HealthComp's continuous correspondence with plaintiff shows HealthComp, not Eskaton, assessed and denied her claim. Plaintiff's direct appeal to HealthComp states without objection, "[w]e were informed by your counsel, Robert Weeks Esq., that we are to direct [plaintiff's] appeal to HealthComp's office." A.R. 293. Eskaton delegated discretionary authority to HealthComp, and plaintiff knew about HealthComp's role.

Plaintiff also argues HealthComp lacks discretionary power because HealthComp is not a Plan fiduciary. Whether HealthComp is a fiduciary under the Plan depends on its

_____

[3] Plaintiff also argued in her briefs that California Insurance Code section 10110.6 invalidates the Plan's discretionary clause. Pl.'s Mot. at 20. But, at hearing, she conceded this section applies only to discretionary authority provisions in life insurance or disability insurance policies, not to group-funded health plans such as the one here. The court thus does not address this argument.

[4] Except for the A. R., in instances in which a filing shows two page numbers, the court refers to the docket page numbers found at the top, right hand corner of each page.

8

functions, not on its title. If HealthComp possesses fiduciary-like functions and powers, it is a fiduciary; an official designation is not required. A.R. 64 (defining a fiduciary as an entity with "discretionary authority or responsibility in the administration of the Plan"). Although the Plan clarifies that simply paying claims according to the Plan's rules does not transform HealthComp into a fiduciary, A.R. 65, the record shows HealthComp did far more than that: HealthComp decided what agreements and signatures plaintiff's claim required, HealthComp denied plaintiff's claim based on her form alteration, HealthComp denied plaintiff's appeals, and HealthComp corresponded directly with plaintiff and her counsel. In short, HealthComp acted as a fiduciary, HealthComp had discretionary authority, and HealthComp exercised its authority here.

B.     HealthComp's Alleged Procedural Violations

Plaintiff next contends that even if the Plan gives HealthComp discretionary power, HealthComp's procedural errors were so flagrant the court should review HealthComp's decision *de novo*.

1. ERISA Suits: Benefits Action versus Fiduciary Breach Action

Because plaintiff's position conflates two kinds of ERISA suits, the court must clarify the difference. A plaintiff may sue under ERISA either to recover benefits she believes were wrongly denied or to attack the health plan's compliance with its ERISA-mandated fiduciary duties, but generally not both. *See* 29 U.S.C. § 1132(a)(1)(B)[5] (benefits action), § 1132(a)(3)[6] (breach of fiduciary duty); *Varity Corp. v. Howe*, 516 U.S. 489, 510-16 (1996) (noting plaintiff may bring a private ERISA action for breach of fiduciary duty only when § 1132(a)(1)(B) offers no other remedy); *but see CIGNA Corp. v. Amara*, 563 U.S. 421, 441 (2011) (permitting both an ERISA benefits claim and claim for contract reformation under ERISA's

---

[5] Empowering individuals to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B).

[6] Empowering "a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]" 29 U.S.C. § 1132(a)(3).

catch-all provision because contract reformation is not available in benefits action); *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 960-62 (9th Cir. 2016) (interpreting *Amara* as restricting fiduciary breach claims to cases where requested remedy is unavailable in benefits action), *as amended on denial of reh'g and reh'g en banc* (Aug. 18, 2016).

Here, plaintiff asserts only a benefits claim; she filed no breach of fiduciary duty claim. Compl. ¶¶ 26-35. Yet her briefing attacks the Plan's compliance with ERISA's disclosure requirements. This argument supports a breach of fiduciary duty claim, not a benefits claim. *See, e.g.*, Pl.'s Mem. at 24 ("HealthComp's claim denial is subject to *de novo* review because the issue . . . is whether the [the Plan] complied with statutory disclosure requirements."). The distinction matters. Courts review breach of fiduciary duty claims *de novo* because they require independent assessment of the plan's compliance with ERISA's disclosure requirements; courts review a plan administrator's discretionary benefits denial for abuse of discretion. *Abatie*, 458 F.3d at 971. At hearing, plaintiff conceded the conflation and requested leave to add a breach of fiduciary duty claim, which defendants opposed.

The court denies plaintiff's request. First, plaintiff offers no justification for her delayed request: The parties have now completed substantial discovery, all parties have cross-moved for summary judgment. Second, as noted above, the legal propriety of seeking recovery on both benefits and fiduciary duty breach claims under ERISA is doubtful under the fact pattern of this case. *Moyle*, 823 F.3d at 960-62.

## 2. Alleged Procedural Errors

Plaintiff's reference to procedural errors still has some relevance in this benefits action. Although plan administrators have wide discretion to deny benefits claims, ERISA mandates minimum notice and reporting requirements. *See* 29 U.S.C. § 1021(a) (disclosure to all plan participants); *id.* § 1021(b) (reporting requirements); *id.* § 1133 (claims procedures); *id.* § 2560.503-1 (same). If flagrant enough, procedural noncompliance with these requirements can remove the administrator's decision from deferential to *de novo* review. *See Abatie*, 458 F.3d at 971. This is because courts defer to decisions only if the administrator exercises discretion the plan contractually confers: "[A]n administrator cannot contract around the procedural

requirements of ERISA" so decisions that flout these mandates fall outside an administrator's discretionary authority. *Id.* at 971-72 (citing *Firestone*, 489 U.S. at 111).

For a procedural error to rise to the level of altering the standard of review, it must be more than a mere "irregularity"; the error must have substantively harmed the claimant. *Id.* at 971; *Gatti v. Reliance Std. Life Ins.*, 415 F.3d 978, 985 (9th Cir. 2005) ("[ERISA procedural violations] do not alter the standard of review unless those violations are so flagrant as to alter the substantive relationship between the employer and employee, thereby causing the beneficiary substantive harm."); *see also Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 392-93 (5th Cir. 2006) (applying "substantial compliance" standard to alleged ERISA procedural violations). More minor procedural mishaps are merely "factored into the calculus of whether the administrator abused its discretion." *Abatie*, 458 F.3d at 959; *see also Anderson v. Suburban Teamsters of N. Ill. Pension Fund Bd. of Trs.*, 588 F.3d 641, 647-48 (9th Cir. 2009) (applying abuse of discretion standard even though same body decided the initial denial and its appeal because although a clear error, there were no "wholesale and flagrant violations" of ERISA procedures or any "utter disregard of the underlying purpose of the plan[.]") (citation and quotation marks omitted).

Two Ninth Circuit cases illustrate procedural flagrancies warranting *de novo* review. In *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1353 (9th Cir. 1984), the plan administrator "failed to comply with virtually every applicable mandate of ERISA" when it hid the policy details from the employees, offered them no claims procedure and provided them with no relevant plan information. *Gatti*, 415 F.3d at 984-85 (citing *Blau*, 748 F.2d at 1353, *abrogated on other grounds as recognized by Dytrt v. Mountain State Tel. & Tel. Co.*, 921 F.2d 889, 894 n.4 (9th Cir. 1990) (applying *de novo* review where the administrator kept the policy details secret). The Ninth Circuit cites *Blau* as the quintessential example of a decision unworthy of deferential review. *Id.* Likewise, in *Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1107 (9th Cir. 2003), the court deemed the procedural errors sufficiently flagrant, given the claims administrator's prolonged "radio silence," its delayed request for more

information coming just one day before the deadline, and its denial of Jebian's claim because he could not gather this information in the excessively short time available. *Id.*

But in many cases the procedural errors are not so flagrant. Courts defer to these decisions, provided the administrators "engaged in an ongoing, good faith exchange of information" with the claimant. *Abatie*, 458 F.3d at 972 (citation and quotation marks omitted); *Jebian*, 349 F.3d at 1107 ("[I]nconsequential violations of the deadlines . . . would not entitle the claimant to *de novo* review . . . in the context of an ongoing, good faith exchange of information between the administrator and the claimant.") (citations and quotation marks omitted).

Here, plaintiff cites several alleged procedural calamities in her claim process, but, as discussed below, not one approaches those deemed flagrant in *Blau* or *Jebian*. Rather, the administrative record shows HealthComp "engaged in an ongoing, good faith exchange of information" with plaintiff, explained its decisions at each step and gave plaintiff multiple chances to resubmit required paperwork and appeal her benefits denial. From September 2014 through December 2015 plaintiff and HealthComp exchanged more than twenty-five letters. *See* A.R. 124-25, 134-36, 146-47, 158-60, 161-63, 171, 264-65, 266-68, 271, 276-78, 279-81, 290-91, 292, 293-94, 297-98, 301-03, 304, 305, 306-14, 315, 316-17, 318-20, 321-39, 440-41, 442-43. As discussed next, each procedural irregularity plaintiff cites was ultimately inconsequential.

a) <u>Ex Parte Communications with Plaintiff</u>

Plaintiff argues HealthComp violated procedural safeguards when it wrote directly to her instead of her attorney on October 22, 2014 and again on December 3, 2014. Pl.'s Mot. at 16 (citing 29 C.F.R. § 2560.503-1 (b)(4)'s declaration that a plan's procedures are only reasonable if they do not preclude an authorized representative from acting on a claimant's behalf).

This direct contact is a procedural error. Plaintiff's attorney told HealthComp he was representing plaintiff, so HealthComp should send all related correspondence to his office. A.R. 124 (letter dated Sep. 29, 2014). Yet HealthComp later sent two denial letters directly to plaintiff. A.R. 144-45 (dated Oct. 22, 2014); A.R. 264-65 (dated Dec. 3, 2014). Plaintiff did not

1   know HealthComp sent these denials only to her, and plaintiff's attorney says he knew nothing

2   about them.  Pl.'s Mem. at 17.

3        But this procedural misstep did not substantively harm plaintiff.  Within weeks of

4   the second ex parte communication, HealthComp advised plaintiff's attorney that the accident

5   questionnaire was a prerequisite to plaintiff's claim; explained why plaintiff's handwritten

6   alterations to the questionnaire violated the Plan's conditions precedent to coverage; detailed why

7   it denied plaintiff's claim; and reiterated the 180-day appeal deadline.  A.R. 271 (HealthComp's

8   letter dated Dec. 24, 2014).  Plaintiff's counsel responded, acknowledging plaintiff's

9   questionnaire alteration, attacking the questionnaire's legality, and explaining plaintiff would not

10  re-submit an unaltered version.  A.R. 279.  This last letter establishes plaintiff's counsel received

11  HealthComp's December 24, 2014 letter and knew about plaintiff's benefits denial and the basis

12  for it, despite not receiving the initial denial letters.

13       In sum, HealthComp's ongoing, good-faith communication with plaintiff's counsel

14  throughout the remaining steps in the claims and appeal process remedied these two initial

15  procedural errors.

16                    b)      Allegedly Unclear Claim Denials

17       Plaintiff next argues HealthComp did not properly explain why it denied her

18  benefits.  Pl.'s Mem. at 17.  She cites 29 C.F.R. § 2560.503-1 (g)(1),[7] which requires all benefits

19  determinations be clearly written so the claimant can understand them, explain the specific reason

20  for denial, reference the specific plan provision upon which the denial is based, describe any

21  missing information and explain why the information is necessary.  Plaintiff argues

22

23       _____
          [7] Mandating that the plan "provide a claimant with written or electronic notification of any
24  adverse benefit determination . . . set[ing] forth, in a manner calculated to be understood by the
     claimant— (i) The specific reason or reasons for the adverse determination; (ii) Reference to the
25  specific plan provisions on which the determination is based; (iii) A description of any additional
     material or information necessary for the claimant to perfect the claim and an explanation of why
26  such material or information is necessary; (iv) A description of the plan's review procedures and
     the time limits applicable to such procedures, including a statement of the claimant's right to bring
27  a civil action under section 502(a) of the Act following an adverse benefit determination on
     review; . . . ."  29 C.F.R. § 2560.503-1(g)(1).

28

HealthComp's denial letters botched each requirement.  Pl.'s Mem. at 17.  She argues, although HealthComp ultimately denied her for refusing to sign a subrogation agreement, the initial denial letters ambiguously cited Code 70 which means "requested information not received" as the basis for denial.  A.R. 144-45, 266-67 (initial denial letters); A.R. 316, 442–43 (final post-appeal letter explaining benefits denial).  She also contends the denial letters did not explain why the missing information was necessary.

The record consistently shows HealthComp denied plaintiff's claim because the accident questionnaire was either missing or altered.  HealthComp's first letter asked plaintiff to promptly submit the accident questionnaire and acknowledge the subrogation rights, citing both as conditions precedent to coverage.  A.R. 134.  Plaintiff waited more than two-and-a-half months to respond to this request.  A.R. 266-68.  Meanwhile, HealthComp denied two benefits requests related to plaintiff's accident based on the missing accident questionnaire, which triggered the denial based on Code 70's "requested information not received."  A.R. 146, 264 (Oct. 22 and Dec. 3, 2014 denials).  When HealthComp initially denied these requests, it did not know plaintiff would later alter the Plan's subrogation rights; the early denials hinged exclusively on the missing questionnaire.  *Id.*  The "messages" section in both letters explained "a new claim may be considered once accident information is received."  A.R. 147, 265.  Both letters also outlined the 180-day appeal deadline.  *Id.*

HealthComp's denial letters were clear, timely and ERISA-compliant HealthComp's ongoing, good-faith communication with plaintiff's counsel throughout the denial process remedied any potential, minor procedural errors along the way.  Plaintiff's qualms as to the claim denials do not alter the review standard.

c)  Allegedly Biased Appeal Process

Plaintiff also argues her appeals process lacked independence because the same person single-handedly denied her claim and the resulting appeals.  Pl.'s Mem. at 18.  ERISA declares that a benefits denial review is not full and fair if the same individual that initially denied the claim decides the appeal or if that person's subordinate decides the appeal.  29 U.S.C. § 2560.503-1 (h)(3)(ii).  Plaintiff takes the position that Rob Weeks, HealthComp's attorney,

1    issued her two initial benefits denials and also decided the appeals of those two denials.  Pl.'s

2    Mem. at 19 (citing Dec. 24, 2014 denial and its April 24, 2015 appeal; Oct. 2, 2015 denial and its

3    Dec. 8, 2015 appeal).

4         Plaintiff's qualms lack support.  Plaintiff submits no evidence that Mr. Weeks

5    made the initial October 22, 2014 and December 3, 2014 benefit denials from which this case

6    derives.  The record shows only that, as HealthComp's legal counsel, he initially corresponded

7    with plaintiff and plaintiff's counsel about what was required to submit a claim, and that he later

8    decided the resulting appeals, also in his capacity as HealthComp's counsel.  *See* A.R. 297-98,

9    442-43.  That Mr. Weeks wrote to plaintiff's counsel on December 24, 2014, stating he received

10   the accident questionnaire and explaining its inadequacy does not indicate he was involved at

11   both relevant "levels," Because that letter was not a benefit denial letter; it simply verified that

12   coverage had already been denied until plaintiff re-submitted an unaltered questionnaire.

13        The record does not show who issued the October 22 and December 3, 2014

14   denials.  While Rhoda Renovato, who worked in a loss and prevention and recovery division, was

15   handling plaintiff's claims in October 2014, *see* A.R. 134-36, 161-63 (Renovato's Oct., 2014

16   letters to plaintiff's counsel), plaintiff cites no evidence Rob Weeks was Ms. Renovato's

17   subordinate such that his handling of an appeal would be prohibited.  Plaintiff's arguments

18   pertaining to the independence of the appeals process she was accorded does not alter the review

19   standard.

20                    d)    Plaintiff's Second Appeal Denial

21        Plaintiff argues HealthComp and Eskaton violated procedural safeguards by

22   denying her second appeal as untimely.  Pl.'s Mem. at 29.  She cites ERISA's rule that time

23   limitations should toll while second appeals are pending.  *Id*. at 30 (citing 29 C.F.R

24   § 2560.503-1(c)(3)(ii)).  She also faults Eskaton for denying her appeal belatedly, and for only

25   telling her about its review after-the-fact, which precluded her from submitting supporting

26   evidence.  *Id*.

27        Here again, plaintiff has not shown procedural errors flagrant or harmful enough to

28   alter the review standard.  First, plaintiff incorrectly interprets the Plan as offering two levels of

15

appeal when it does not. As plaintiff sees it, HealthComp "invited [her] to engage in a second level of appeal [when it] advis[ed her] that her appeal of April 21, 2015, was denied and that she had 180 days to appeal the adverse determination []." *Id.* at 29. But the Plan provides only one level of appeal. *See* A.R. 51. HealthComp's purported invitation merely reiterated the boilerplate, 180-day appeal deadline for benefit denials; it did not extend yet another 180-day deadline for challenging her appeal denial. Moreover, the language of the letter does not invite plaintiff to appeal again. Rather, the relevant portion states:

> Please be advised that as of this date, your client's appeal is denied and benefits remain unavailable until such time as the condition precedent is met. Please also be advised that the deadline to file any appeals is 180 days from the date of the adverse benefit determination, and all claims must be submitted within one-year of the date of service. Any claims or appeals received beyond those deadlines cannot be considered, and must be denied under the terms of the Plan.

A.R. 298.

Second, even if permitted under the Plan, plaintiff's second appeal did not raise legitimate grounds to reconsider her claim. Nevertheless, HealthComp contends it reconsidered plaintiff's claim and denied it, again because plaintiff never signed the subrogation agreement. A.R. 442-45. The Plan's one-year period for submitting the requisite paperwork had lapsed, so plaintiff could no longer try to cure or supplement her claim. Though plaintiff argues the subrogation agreement became irrelevant after she dismissed her third-party lawsuit, Pl.'s Mem. at 20-21, HealthComp's counsel explained at hearing that the subrogation agreement remains a precondition any time third parties cause an injury, even when there is no third-party lawsuit. Lastly, even if plaintiff's third-party lawsuit dismissal had mooted the subrogation dispute, she told HealthComp about the dismissal after the one-year mark. By then, her claim was already untimely under the Plan and she could not retroactively revive it. A.R. 321–23. Thus, even if plaintiff's second self-styled appeal was allowed, HealthComp committed no substantive procedural violations in its denial.

The same is not true for Eskaton. The first time Eskaton mentioned its involvement in plaintiff's claim-review process was in a letter dated two months after plaintiff

filed this lawsuit. A.R. 444-45 (Eskaton letter dated Mar. 28, 2016). Eskaton characterizes this letter as an after-the-fact notification that merely "confirms" out of an "abundance of caution," that it independently reviewed and denied plaintiff's "appeals" on October 23, 2015. Eskaton Opp'n at 6: Eskaton Mem. at 10. As the plural term "appeals" suggests, Eskaton's letter signals it assessed both of plaintiff's appeals, yet this letter, dated only weeks after plaintiff's second appeal, and more than six months after her first appeal, appears to have been triggered only by the second appeal. The record otherwise does not show Eskaton was ever involved in the earlier appeals process, or that Eskaton disclosed its involvement at any stage. Its letter thus highlights a potentially serious procedural error: Plaintiff was given no notice of or chance to submit supporting documents for Eskaton's apparent independent review.

Eskaton's error, however, ultimately caused no substantive harm: Plaintiff was not entitled to a second appeal because the Plan does not actually provide for one. Even if she had been so entitled, HealthComp properly reviewed and denied her appeal. Nothing in the record indicates Eskaton ever directed or oversaw HealthComp's review of plaintiff's first or second appeal. Eskaton's interjection of its views at the end of the process thus did not interfere with plaintiff's procedural rights. Plaintiff in fact objects to the court's consideration of Eskaton's March 28, 2016 letter, or its purported involvement. Plaintiff's objection to including the letter in the administrative record is GRANTED. *See* ECF No. 36 at 3 (noting, with a typographical error, plaintiff's objection); *supra* Section I.B. at 2 n.2 (this court's explanation of the typographical error).

Omitting the letter from the record does not affect or discredit HealthComp's independent denial of plaintiff's second appeal. Plaintiff's arguments pertaining to her second appeal thus do not alter the review standard.

e) Clarity and Notice of the Plan's Deadlines

Lastly, plaintiff argues the Plan's timelines and procedures are unclear, which violates ERISA's clarity requirement. Pl.'s Mem. at 19-20 (citing 29 U.S.C. § 2560.503-1 (g)(1)(iv)). Even if plaintiff's confusion is genuine, the administrative record reveals consistently clear procedures and timelines. As noted above, the Plan states claims must be filed "within 365

17

days of the date of service," defined as 365 days from the date doctors treated plaintiff and ambulances rescued her, A.R. 48; here this was the same day as her June 1, 2014 accident. The Plan also says "[t]he Claims Administrator will determine if enough information has been submitted to enable proper consideration of the claim if not more information may be requested from the claimant." A.R. 48. For a post-service claim, a claim for reimbursement after already receiving treatment, the Plan explains the administrator must typically accept or deny a claim no more than 30 days after it is filed, with a 15-day extension if more information is needed. A.R. 50. A claimant must respond to a request for more information within 45 days and must appeal adverse benefits decisions within 180 days. A.R. 50-51.

The Plan's procedure is clear, and plaintiff complied with many of its timetables. Indeed, she timely appealed the adverse benefit determinations, a sign she was not confused. A.R. 293-94 (appeal dated April 21, 2015, within 180 days of both the Oct. 22, 2014 and Dec. 3, 2014 denial letters); A.R. 297-98 (denial of appeal not based on untimeliness). HealthComp also repeatedly told plaintiff the precise reason for each denial, how to fix it, and the timetable to appeal it. For instance, HealthComp told plaintiff if she acknowledged the subrogation rights by re-submitting an unaltered questionnaire within a year of her accident, HealthComp could reconsider her claim. A.R. 271. She never did. A.R. 316-17, 444-45.

Because not one of plaintiff's alleged procedural errors is flagrant enough to alter the standard of review, the court reviews HealthComp's decisions for abuse of discretion.

III.     ABUSE OF DISCRETION REVIEW

        A.     Legal Standard

"The test for abuse of discretion . . . is whether [the court is] left with a definite and firm conviction that a mistake has been committed." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011) (citation and quotation marks omitted). "An ERISA administrator abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." *Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005) (citations omitted). Where parties' plan interpretations

18

differ, the court need not discern "whose interpretation . . . is most persuasive, but whether the [administrator's] interpretation is unreasonable." *Canseco v. Constr. Laborers Pension Tr. for S. Cal.*, 93 F.3d 600, 606 (9th Cir. 1996) (citation and quotation marks omitted). Reasonableness turns on whether the decision is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Salomaa*, 642 F.3d at 676 (citation and quotation marks omitted). This query begins with the plan's language and ends with the administrative record. *Day v. AT & T Disability Income Plan*, 698 F.3d 1091, 1096 (9th Cir. 2012) ("We begin with the relevant portions of the Plan"); *Banuelos v. Constr. Laborers' Tr. Funds*, 382 F.3d 897, 904 (9th Cir. 2004) ("[G]eneral rule [is] that a district court may not hear evidence outside the administrative record[.]").

Under an abuse of discretion review, a court "may not merely substitute [its] view for that of the fact finder." *Salomaa*, 642 F.3d at 676 (citation omitted). But an administrator with a conflict of interest may warrant less deference. *See MetLife Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008) (explaining courts may defer less to fiduciary that denies a claim if the fiduciary is the same entity funding the denied benefits because the conflict of interest is inherent). Here, plaintiff contends HealthComp has a conflict of interest that justifies diminished deference. The court disagrees. Eskaton funds the Plan, yet HealthComp denied plaintiff's claim and her appeals. A.R. 67, 70 (Eskaton funds Plan); A.R. 48, 56, 64 (HealthComp denied claim). HealthComp is an independent claims administrator with no connection to Eskaton or apparent economic interest in denying a claim. No conflict impedes the court's deference to HealthComp's decisions.

    B.    <u>Discussion</u>

Whether HealthComp's decision to deny plaintiff benefits survives an abuse of discretion review depends on how logical, well-reasoned and supportable the decision is. *Boyd*, 410 F.3d at 1178.

The Plan's subrogation rights are triggered any time a third party contributes to the injuries from which a plaintiff's claim derives. From the outset, plaintiff's case implicated the Plan's subrogation rights provision. Under the Plan, acknowledging the subrogation rights and

sending all paperwork needed to advance those rights are express "conditions precedent to coverage." A.R. 56 ("the Plan shall have no obligation whatsoever to pay medical . . . benefits . . . if a Covered Person refuses to cooperate with the Plan's . . . Subrogation rights or refuses to execute and deliver such papers as the Plan may require in furtherance of its . . . Subrogation rights"); *see also id.* ("when a right of Recovery exists, the Covered Person will execute and deliver all required instruments and papers as well as doing whatever else is needed to secure the Plan's right of Subrogation as a condition to having the Plan make payments."). In other words, if a claimant does not acknowledge the Plan's subrogation rights, then the administrator may deny her claim.

Here, plaintiff initially waited months to submit the questionnaire containing the subrogation acknowledgement. Having expressly requested plaintiff complete the questionnaire and identified its submission as a "condition precedent to coverage," A.R. 134 (HealthComp letter dated Oct. 10, 2014), HealthComp denied two claims while awaiting this crucial document. A.R. 146-47 (Oct. 22, 2014 denial); A.R. 264-65 (Dec. 3, 2014 denial). Plaintiff later faxed HealthComp the questionnaire, but crossed out the subrogation rights section and hand wrote "Employee will follow the law." A.R. 268. HealthComp determined this handwritten alteration precluded satisfaction of a condition precedent to coverage. A.R. 271. Plaintiff never filed an unaltered subrogation agreement; instead, she contested the agreement's legality generally and its status as a condition precedent. After the one-year, post-accident filing deadline passed, HealthComp deemed plaintiff's claim untimely and declared her case closed.

The parties dispute whether it was an abuse of discretion to deny coverage based on a missing subrogation agreement. The court thus must decide whether HealthComp reasonably interpreted the Plan as requiring this agreement. Plaintiff argues the court should follow a Sixth Circuit case that found the denial of benefits arbitrary where, as here, the denial was based on a missing subrogation agreement. *See* Pl.'s Mem. at 28-29 (citing *Shelby Cty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Tr. Fund*, 203 F.3d 926, 934 (6th Cir. 2000)). In *Shelby*, the claimant submitted bills within the plan's time limit, but the administrator denied the claim because Shelby submitted a subrogation agreement after the

one-year filing deadline.  *Id*. at 929-30.  The court found the denial arbitrary: The plan language did not say a subrogation agreement was "necessary to file a claim" or that "benefits may be denied altogether" for not submitting one; the plan merely said claimants must "submit a signed copy of a Subrogation Agreement . . . as part of proof of loss for a claim involving a third party action."  *Id*. at 934.  The only consequence to a claimant for not providing a signed subrogation agreement was that payment "may be" delayed or "may be" disallowed for inadequate proof of loss.  *Id*.  The court thus found the benefits denial was not rationally based in the language of the plan in the case.  *Id*. at 935.

Here, unlike in *Shelby*, the Plan expressly identifies a claimant's cooperation with the Plan's subrogation rights, and a claimant's submission of requested information regarding those rights, a "condition precedent to coverage."  A.R. 271, 298 (explaining plaintiff must satisfy condition precedent by acknowledging subrogation rights within one year of date of service).  This distinction is critical: The *Shelby* court found the benefits denial arbitrary where the plan did not say a subrogation agreement "is necessary to file a claim and that benefits may be denied altogether."  *Shelby*, 203 F.3d at 935.  Because the Plan here expressly conditions benefits payment on a claimant's acknowledgment of subrogation rights, and because plaintiff unilaterally deleted acknowledgment language from the subrogation agreement, then contested its legality and refused to submit an unaltered agreement, HealthComp's decision to deny coverage is supported by the Plan terms.

In sum, HealthComp's benefits determinations were transparent, reasonable and rationally tied to the Plan's language.  Although the record reflects  a few procedural irregularities, HealthComp held an ongoing, good-faith dialogue with plaintiff and so did not abuse its discretion.  The court therefore finds for HealthComp and Eskaton on plaintiff's benefits claim.

IV.    ATTORNEYS' FEES

The parties also cross-move for summary judgment on plaintiff's claim for attorneys' fees and costs under 29 U.S.C. § 1132(g)(1).  To succeed on this claim, plaintiff must show some degree of success on the merits.  *Simonia v. Glendale Nissan/Infiniti Disability Plan*,

608 F.3d 1118, 1120 (9th Cir. 2010); *Hummell v. Rykoff*, 634 F.2d 446, 452-53 (9th Cir. 1980).  If plaintiff makes this initial showing, the court goes on to consider five factors, including the degree of the opposing party's culpability, the opposing party's ability to pay, the deterrence value of a fee award, the impact plaintiff's case would have on ERISA plan beneficiaries as a whole, and the relative merits of the parties' positions.  *Hummell v. Rykoff*, 634 F.2d 446, 452-53 (9th Cir. 1980).

Here, as analyzed above, plaintiff has not shown some degree of success on the merits.  Plaintiff characterizes her suit as meritorious because it "arises from the [P]lan's flagrant non-compliance with ERISA notice and disclosure requirements."  Pl.'s Mem. at 31.  Yet she conceded at hearing the vehicle to vindicate such notice and disclosure violations is a breach of fiduciary duty action, not the ERISA benefits action she pled.  The allegations are thus irrelevant to gauging her success here.  Although HealthComp's procedural indiscretions required the court's consideration, they ultimately proved inconsequential because HealthComp held an ongoing, good-faith dialogue with plaintiff.  Plaintiff is not entitled to attorneys' fees, so the court finds for defendants on this claim.  Although  29 U.S.C. § 1132(g)(1) provides for reciprocal fee awards, defendants have neither requested nor analyzed their rights to such fees.  In any event, plaintiff's position does not appear to reflect  frivolity or bad faith  such that fees to the defense would be  warranted.

V.    <u>CONCLUSION</u>

The court GRANTS in full Eskaton's and HealthComp's summary judgment motions and DENIES plaintiff's summary judgment motion.

This resolves ECF Nos. 23, 25, 26.

IT IS SO ORDERED.

DATED:  October 26, 2017.

_____
UNITED STATES DISTRICT JUDGE